UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. **10-CV-60059-Huck-O'Sullivan**

| | |
|---|---|
| IMMEDIATE CAPITAL GROUP, INC., a Florida corporation, d/b/a INCREDIBLE DISCOVERIES,<br><br>Plaintiff,<br><br>v.<br><br>SPONGETECH DELIVERY SYSTEM, INC., a Delaware corporation<br><br>Defendant. | FILED by VT D.C.<br>ELECTRONIC<br><br>Jan. 15, 2010<br><br>STEVEN M. LARIMORE<br>CLERK U.S. DIST. CT.<br>S.D. OF FLA. - MIAMI<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff, IMMEDIATE CAPITAL GROUP, INC., d/b/a INCREDIBLE DISCOVERIES and hereby files its Complaint against Defendant, SPONGETECH DELIVERY SYSTEM, INC., and alleges as follows:

### JURISDICTION AND PARTIES

1. This is an action for damages greater than Seventy-Five Thousand dollars ($75,000.00), exclusive of attorney's fees, interest, and court costs.

2. There is diversity of citizenship among the parties such that meets the diversity jurisdiction requirements of 28 U.S.C. §1332(a)(3).

3. Plaintiff, IMMEDIATE CAPITAL GROUP, INC., d/b/a INCREDIBLE DISCOVERIES (hereinafter "ICG" or "Plaintiff") is a Florida corporation with its principal place of business in Broward County, Florida.

4. SPONGETECH DELIVERY SYSTEM, INC., (hereinafter "Spongetech" or "Defendant") is a Delaware Company with its principal place of business in New York, New York.

5. Venue is appropriate in the United States District Court, Southern District of Florida, Fort Lauderdale Division, because the amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars, the parties have diversity of citizenship which meets the diversity jurisdiction requirements of 28 U.S.C. §1332(a)(3), and because the Venue requirements of 28 U.S.C. §1391(a)(2) and 28 U.S.C. §1391(f)(1) are met according to the following facts: (1) The events giving rise to this claim and cause of action occurred in Broward County, Florida; (2) the parties named herein solicited or transacted business in Broward County, Florida; and (3) Plaintiff sustained damages in Broward County, Florida related to said transacted business.

6. In the alternative under Florida rules, Venue is appropriate in Florida according to and under Florida's Long Arm Statute due to the venue selection clause of the contracts signed by Defendant, and attached hereto as Composite Exhibit A. Defendant SPONGETECH is subject to Florida's Long Arm Statute §48.193(1)(a) because: (1) DEFENDANT breached an Agreement, entered into and fulfilled within the state of Florida, thereby engaging in and conducting business within the state of Florida; (2) DEFENDANT repeatedly solicited, accepted and transacted business within the State of Florida; (3) DEFENDANT engaged in business transactions in Florida, and reaped significant benefits from the work of Florida corporations performed at the request of DEFENDANT; and (4) DEFENDANT failed to perform acts required to be performed in the state of Florida pursuant to said business transactions in Florida, namely the payment of royalties pursuant to contract.

7.     More specifically, SPONGETECH failed to pay monies, in the form of royalties, due and owing pursuant to and set forth in the Agreements with the Plaintiff (*see Composite Exhibit A*), for services contracted for and performed in the state of Florida. SPONGETECH solicited, executed and repeatedly ratified these Agreements, via numerous telephone calls, emails and other electronic means to Plaintiff, which is located in Broward County. Defendant SPONGETECH engaged in Agreements with Plaintiff for services rendered, namely the writing and producing of a television Commercial (the "Commercial" and the "Services"). The Commercial was produced to air in numerous states, including Florida, for Spongetech products (the "SPONGETECH Wash & Wax System" and the "SPONGETECH Pet Sponge") (collectively the "Products") which were and are being sold throughout the country, including Florida, and Products have accrued royalties payable in Florida pursuant to the Agreements made. Defendant remitted monetary consideration to Plaintiff in Florida for these initial services and initially began to remit royalties pursuant to these Agreements, but unilaterally stopped royalty payments on or about March 17, 2009. SPONGETECH is now reaping the benefits of Plaintiff's work, and is not remitting royalties to Plaintiff. DEFENDANT should have reasonably foreseen that such conduct would allow it to be hailed in court in Florida.

8.     At the heart of this matter are Products which the DEFENDANT knew, or should have known, would, and did, solicit Florida buyers to purchase in the ordinary course of commerce. DEFENDANT's Commercial for the SPONGETECH Products was broadcast nationwide and has produced nationwide sales of these SPONGETECH Products, including within the state of Florida, and for which the Plaintiff was to be compensated Royalties based on such sales. DEFENDANT has steadfastly refused to pay such Royalties to Plaintiff, thereby

3

injuring Plaintiff, who resides within the state of Florida. Therefore, DEFENDANT should have reasonably foreseen that such conduct would allow it to be hailed in court in Florida.

9. A Jury Trial is demanded pursuant to Federal Rules of Civil Procedure 38(a) and Federal Rules of Civil Procedure 38(b) on all issues triable before a jury.

## GENERAL ALLEGATIONS

10. On or about June 13, 2007 and January 30, 2008, DEFENDANT entered into two separate written Agreements with Plaintiff for the writing and production of television Commercials for the SPONGETECH Wash & Wax System and the SPONGETECH Pet Sponge (the "Services") (collectively the "Agreements"). *See Composite Exhibit A.*

11. The Agreements provided that Plaintiff would write the script for and produce short form television commercial spots of :30, :60 and :120 seconds in length for each of the SPONGETECH Products (hereinafter "Commercials") for DEFENDANT, in exchange for a production budget fee plus a five percent (5%) royalty on "all Retail Sales" and on "gross worldwide sales, less any Returns or Uncollectible Accounts." (*see Agreements Section 11, Composite Exhibit A)* The royalties were to be paid on sales via "the Spots [Commercials] dedicated website as described in paragraph 10 [of the Agreements], or any other Electronic Media sales of the Product, engendered by ICG's efforts." (hereinafter collectively referred to as "Royalties")

12. The services of producing the Commercials were performed by Plaintiff at the request of DEFENDANT, and DEFENDANT was well aware and fully understood that Plaintiff provided these Services with the intention that Plaintiff would be compensated for said Services, and DEFENDANT was aware of the terms of the Agreements, including the Royalty provisions as evidenced by the Royalty payments Defendant made to Plaintiff before Defendant decided to

4

unilaterally stop making the Royalty payments. *See Royalty payments to PLAINTIFF, attached as **Exhibit B**.*

13. Plaintiff has further set down the rate of compensation for its Services in an Agreement which has been executed, performed and/or approved and ratified by DEFENDANT, thereby showing knowledge by DEFENDANT of the terms of compensation expected by Plaintiff.

14. DEFENDANT has steadfastly refused to pay Royalty payments due and owing to Plaintiff since March 17, 2009, and continues to refuse to pay Royalty payments as obligated, despite numerous requests to do so, thereby breaching the Agreements.

15. Plaintiff has a good faith belief that damages exceed one hundred thousand dollars ($100,000.00).

16. Plaintiff has had to retain the undersigned counsel to represent it in this cause and has agreed and become obligated to pay a reasonable fee for the firm's services and is entitled to those fees under the Agreements, Section 18.

17. All conditions precedent to the bringing of this action have been performed, occurred, or have been waived.

## COUNT I – BREACH OF CONTRACT

18. Plaintiff hereby realleges and incorporates the allegations set forth in paragraphs 1 through 17 above as if fully set forth herein.

19. Plaintiff has conferred a benefit on the DEFENDANT by producing the agreed upon Commercials.

20. DEFENDANT has knowledge that Plaintiff produced the Commercials, and DEFENDANT has accepted the Commercials and has used the Commercials repeatedly in advertising campaigns, resulting in multi-millions of dollars in revenues for DEFENDANT.

21. The instant circumstances are such that it would be egregiously inequitable for the DEFENDANT to retain the substantial benefit conferred upon them by Plaintiff without paying fair value for such benefit.

22. DEFENDANT materially breached the Agreements with Plaintiff by failing to pay all of the Royalties owed to Plaintiff, which remain due and owing.

23. As a direct result of DEFENDANT's material breach, Plaintiff has been damaged in an amount no less than one hundred thousand dollars ($100,000.00), exclusive of attorney's fees, pre-judgment interest, and court costs.

**WHEREFORE**, Plaintiff demands Judgment against DEFENDANT in an amount no less than one hundred thousand dollars ($100,000.00), plus punitive damages, attorney's fees, pre-judgment interest, court costs, and any other further relief deemed just and proper by this Court.

## COUNT II – OPEN ACCOUNT, IN THE ALTERNATIVE

24. Plaintiff hereby realleges and incorporates the allegations set forth in paragraphs 1 through 17 above, as if fully set forth herein.

25. This action arises from a debt which remains unsettled, specifically, the debt of Royalties to be paid to Plaintiff for Services and products rendered.

26. Plaintiff timely rendered such Services and product as DEFENDANT requested, namely the Commercials for the SPONGETECH Products that DEFENDANT wished to advertise and sell nationally and worldwide.

6

27.     DEFENDANT was to pay for the produced Commercial by remitting a small production fee initially, and Royalties equivalent to five percent (5%) of total sales of the SPONGETECH Products.

28.     DEFENDANT has failed since March 17, 2009 to make such Royalty payments, and said Royalty payments remain due and unpaid since March 17, 2009. DEFENDANT has also refused to allow Plaintiff to conduct a comprehensive accounting to determine the amount of this unsettled debt, and has refused to provide documents relating to sales of the SPONGETECH Products since March 17, 2009.

29.     As a direct result of DEFENDANT'S willful and malicious actions, Plaintiff has been damaged in an amount no less than one hundred thousand dollars ($100,000.00), exclusive of attorney's fees, pre-judgment interest, and court costs.

**WHEREFORE**, Plaintiff demands Judgment against DEFENDANT in an amount no less than one hundred thousand dollars ($100,000.00), plus punitive damages, attorney's fees, pre-judgment interest, court costs, and any other further relief deemed just and proper by this Court.

### COUNT III – ACCOUNTING, IN THE ALTERNATIVE

30.     Plaintiff hereby realleges and incorporates the allegations set forth in paragraphs 1 through 17 above, as if fully set forth herein.

31.     By virtue of the fact that the Agreement provides for DEFENDANT to collect all Royalties, maintain appropriate records, and disburse Plaintiff's Royalty payments, Plaintiff and DEFENDANT share a fiduciary relationship, and have entered into a complex transaction.

32.     The relationship between Plaintiff and DEFENDANT is of a fiduciary character as to money, and the transactions at issue are so involved and complicated that a remedy at law is

insufficient to administer complete justice because the DEFENDANT has refused to allow Plaintiff's to perform an accounting to ascertain Royalties due.

33. Plaintiff has no adequate remedy at law without a proper accounting, as an accounting is necessary to determine the amount due.

34. Plaintiff requests that a Special Master be appointed by the Court to take an accounting.

**WHEREFORE**, Plaintiff demands Judgment against DEFENDANT for negligence, special master costs or fees, punitive damages, attorney's fees, pre-judgment interest, court costs, and any other further relief deemed just and proper by this Court.

## COUNT VI - EQUITABLE LIEN

35. Plaintiff hereby realleges and incorporates the allegations set forth in paragraphs 1 through 17 above, as if fully set forth herein.

36. There are two signed, executed and ratified Agreements attached hereto, as well as other documentation (*see Composite Exhibit A and Exhibit B*) evidencing Plaintiff's intention to charge a Royalty to DEEENDANT for Services and product provided to DEFENDANT, and an obligation by DEFENDANT to pay Royalties that is attached to the sale of each SPONGETECH Product sold.

37. DEFENDANT knew of the Royalty obligation attached to each SPONGETECH Product sold and intentionally refused to honor that obligation. DEFENDANT misrepresented or simply refused to provide Royalties or sales figures of said SPONGETECH Products to Plaintiff, all the while commandeering the portion of monies received for sales on each SPONGETECH Product sold that should have gone to Plaintiff, namely Plaintiff's Royalties.

8

38. This inequity and imbalance of profits is resulting in egregious unjust enrichment, and should be remedied by an equitable lien being placed on each SPONGETECH Product sold, and upon all distribution of monies from sales of said products until such time as Plaintiff is made whole.

39. Such action would achieve an equitable result and would be right and just.

**WHEREFORE**, Plaintiff demands an Equitable Lien be placed against DEFENDANT, and their affiliated companies, on each SPONGETECH Product sold, and upon all distribution of monies from sales of said Products until such time as Plaintiff is made whole, plus punitive damages, attorney's fees, pre-judgment interest, court costs, and any other further relief deemed just and proper by this Court.

### COUNT V - UNJUST ENRICHMENT, IN THE ALTERNATIVE

40. Plaintiff hereby realleges and incorporates the allegations set forth in paragraphs 1 through 17 above, as if fully set forth herein.

41. Plaintiff has conferred a benefit on the DEFENDANT by writing and producing the successful Commercials which have resulted in many millions of dollars in sales of the SPONGETECH Products for the DEFENDANT.

42. DEFENDANT accepted and retained the benefit conferred per the Agreement with Plaintiff, having extensively used the Commercials in advertising and sales campaigns worldwide and generated multi-millions in sales due to use of said Commercials.

43. DEFENDANT knew of the five percent (5%) Royalty obligation attached to each SPONGETECH Product sold and intentionally refused to honor that obligation. DEFENDANT misrepresented or simply refused to provide Royalties or sales figures of said SPONGETECH Products to Plaintiff, all the while commandeering the portion of monies received for sales on

9

each SPONGETECH Product sold that should have gone to Plaintiff, namely Plaintiff's Royalties.

44. It is egregiously unjust for DEFENDANT to commandeer and retain millions of dollars in profits derived because of the skilled talent of Plaintiff, yet subsequently fail to fulfill the obligations set forth regarding the payment of Royalties to Plaintiff.

45. The only just and fair, and/or equitable result would be for the Court to acknowledge and enforce upon DEFENDANT such Royalty obligation.

**WHEREFORE**, Plaintiff demands Judgment against DEFENDANT in an amount no less than one hundred thousand dollars ($100,000.00), plus punitive damages, attorney's fees, pre-judgment interest, court costs, and any other further relief deemed just and proper by this Court.

Patricia Klein, Esq. (Fla. Bar Number 975516)

## Certificate of Service

I hereby certify that on January 12, 2010, I conventionally filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____
Patricia Klein, Esq. (Fla. Bar Number 975516)
Attorney E-mail address: patriciak@pkleinlaw.com
PATRICIA KLEIN, P.A.
2001 W Sample Road, Suite 412
Pompano Beach, Florida 33064
Telephone: (954) 935-3171
Facsimile: (954) 691-2169
Attorneys for Immediate Capital Group, Inc.

## SERVICE LIST
## SPONGETECH DELIVERY SYSTEM, INC.
### Case No. _____
### United States District Court, Southern District of Florida

**Spongetech Delivery System, Inc.**
c/o Registered Agent
The Corporation Trust Center
1209 Orange Street
Wilmington, Delaware  19801

Via Process Server

12