UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-60059-CIV-HUCK/O'SULLIVAN

IMMEDIATE CAPITAL GROUP, INC.,

    Plaintiff,
v.

SPONGETECH DELIVERY SYSTEM, INC.,

    Defendant.
    _____/

**ORDER GRANTING MOTION TO DISMISS**

This cause is before the Court on Spongetech Delivery System, Inc.'s Motion to Dismiss First Amended Complaint (D.E. #21), filed March 26, 2010. Spongetech moves to dismiss Counts II, III, IV, and V of the First Amended Complaint. For the reasons below, the Court grants the motion.

**I.     Background[1]**

Immediate Capital Group, Inc. entered into two written agreements to write and produce television commercials for two of Spongetech's products: the Spongetech Wash & Wax System and the Spongetech Pet Sponge. As part of the agreements, Spongetech is required to pay Immediate Capital a five percent royalty on certain sales of the two products.[2] Immediate Capital produced the television commercials. Since March 17, 2009, however, Spongetech has refused to pay the royalties required by the agreements.

Based on these allegations, Immediate Capital has brought a claim for breach of contract (Count I). In addition, Immediate Capital has brought claims in the alternative for open account (Count II), accounting (Count III), and unjust enrichment (Count V). Immediate Capital also

---

[1] The facts in this section are derived from the allegations in the First Amended Complaint, which the Court accepts as true for the purpose of ruling on Defendants' Motion to Dismiss. *See Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

[2] Specifically, the agreements require Spongetech to pay the royalty "on gross worldwide sales, less any Returns or Uncollectible Accounts, from orders of Product obtained through [various electronic media], engendered by Immediate Capital's efforts" and on "all Retail Sales." *See* Composite Exhibit A attached to the original Complaint (D.E. #1).

seeks an equitable lien (Count IV). Spongetech does not dispute that Immediate Capital has stated a proper claim for breach of contract, but it moves to dismiss Counts II, III, IV, and V pursuant to Rule 12(b)(6) for failure to state a claim.

II.   **Discussion**

    A.   **Count II – Open Account**

"An open account is 'an unsettled debt arising from items of work and labor, goods sold and delivered with the expectation of further transactions subject to future settlement and adjustment.'" *Morse, LLC v. United Wisconsin Life Ins. Co.*, 356 F. Supp. 2d 1296, 1299 (S.D. Fla. 2005) (quoting *Robert W. Gottfried, Inc. v. Cole*, 454 So. 2d 695, 696 (Fla. 4th Dist. Ct. App. 1984)). An open account "'should not include express contracts or other obligations that have been reduced to writing.'" *Id.* at 1299 (quoting *H & H Design Builders, Inc. v. Travelers' Indemnity Co.*, 639 So. 2d 697, 700 (Fla. 5th Dist. Ct. App. 1994)).

Spongetech argues that Immediate Capital's Count II claim for open account should be dismissed because Immediate Capital has pled the existence of an express contract and has incorporated that allegation into its claim for open account. Immediate Capital responds simply by arguing that it is permitted, under the Federal Rules of Civil Procedure, to bring a claim for open account as an alternative to its express contract claim.

Although a plaintiff may bring causes of action in the alternative, a claim for open account fails if it alleges the existence of an express contract. *See id.* at 1300 (dismissing claim for open account because it incorporated earlier allegations as to existence of an express contract between the parties). Here, Count II incorporates the allegations that precede it concerning the existence of express contracts between the parties. *See* Am. Compl. ¶¶ 10, 24. Accordingly, Count II for open account must be dismissed.

    B.   **Count III – Accounting**

"Under Florida law, a party that seeks an equitable accounting must show that: 1) the parties share a fiduciary relationship or that the questioned transactions are complex, and 2) a remedy at law is inadequate." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1071 (11th Cir. 2007). Immediate Capital's allegations do not meet any of these preconditions.

The parties do not share a fiduciary relationship. Immediate Capital alleges that it shares a fiduciary relationship with Spongetech "[b]y virtue of the fact that the Agreement provides for [Spongetech] to collect all Royalties, maintain appropriate records, and disburse Plaintiff's Royalty payments. Am. Compl. ¶ 31. "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 5th Dist. Ct. App. 2003). "When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Id.* at 541. Thus, an ordinary commercial transaction generally does not give rise to a fiduciary relationship. *See, e.g.*, *Validsa, Inc. v. PDVSA Servs. Inc.*, 632 F. Supp. 2d 1219, 1244 (S.D. Fla. 2009) (finding no fiduciary duty where the only relationship was a contractual relationship between merchants); *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 633 (Fla. 4th Dist. Ct. App. 2005). This is no different where the transaction involves a royalty agreement. *See Hustlers, Inc. v. Thomasson*, 253 F. Supp. 2d 1285, 1294 (N.D. Ga. 2002) (applying New York law, finding that a contractual duty to account for and transfer amounts due under a royalty agreement did not establish a fiduciary relationship). Here, the agreement between the parties was an ordinary, arms-length commercial transaction—the purchase of television commercials to advertise products. The only duty alleged by Immediate Capital is a contractual duty to account for and disburse to Immediate Capital royalties due under the parties' agreements. Accordingly, there is no fiduciary relationship.

It is also clear that the parties' transaction is not complex.[3] The provisions of the agreements at issue are standard royalty provisions, requiring only the payment of a five percent royalty. There is nothing complex about them "from an operational or financial standpoint." *Validsa*, 632 F. Supp. 2d at 1244 (finding nothing complex about installment contracts for the sale of sugar and beef). Immediate Capital contends that the Court must accept its allegations as

---

[3] Immediate Capital alleges that "the transactions at issue are so involved and complicated that a remedy at law is insufficient to administer complete justice because [Spongetech] has refused to allow [Immediate Capital] to perform an accounting to ascertain Royalties due." Am. Compl. ¶ 32. The fact that Spongetech has not allowed ICT to perform an accounting, however, is irrelevant to determining the complexity of the transactions. *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, --- F. Supp. 2d ----, 2010 WL 309038, at *5 (S.D. Fla. Jan. 25, 2010).

true. However, Immediate Capital's allegations as to complexity amount to a conclusory statement that the parties "have entered into a complex transaction." Am. Compl. ¶ 31. This is simply a legal conclusion, which is insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Finally, Immediate Capital has an adequate remedy at law—its breach of contract claim in Count I. Immediate Capital asserts "that it has no adequate remedy at law without a proper accounting, as an accounting is necessary to determine the amount due." However, Immediate Capital can use the discovery process to obtain the information it needs to calculate the amount of royalties due. *See Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, --- F. Supp. 2d ---, 2010 WL 309038, at *5 (S.D. Fla. Jan. 25, 2010) ("Where a party has the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate."). Because Immediate Capital has not satisfied any of the requirements to state a claim for accounting, Count III must be dismissed.

### C. Count IV – Equitable Lien

"Under Florida law, equitable liens may be founded upon two bases; (i) a written contract that indicates an intention to charge a particular property with a debt or obligation; or, (ii) a declaration by a court out of general considerations of right or justice as applied to the particular circumstances of a case." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, --- F. Supp. 2d ----, 2010 WL 342256, at *15 (S.D. Fla. Feb. 1, 2010). "[A]n equitable lien can only exist when a party has a special right to a particular property and there is no adequate remedy at law." *Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1297 (S.D. Fla. 2007) (internal quotation omitted).

Immediate Capital seeks an equitable lien against Spongetech, each Spongetech product sold, and the proceeds from those sales. To support its claim, Immediate Capital alleges that the parties' agreements evidence an obligation by Spongetech to pay royalties that are attached to the sale of each Spongetech product sold. *See* Am. Compl. ¶ 36. Despite Immediate Capital's allegation, however, the agreements do not show an intention to charge Spongetech's products or proceeds with a debt or obligation. The agreements merely require that the royalties be

4

calculated based on the number of products sold. Moreover, as discussed above, Immediate Capital's claim for breach of contract provides it with an adequate remedy at law. Accordingly, Count IV must be dismissed.

### D. Count V – Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege that: "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Degirmenci*, 2010 WL 342256, at *15. Under Florida law, a claim for unjust enrichment cannot stand if an express contract exists. *Id.* (dismissing claim for unjust enrichment because the parties had an express contract).

As with Count II, Immediate Capital's claim for unjust enrichment incorporates the allegations as to the existence of express contracts between the parties. *See* Am. Compl. ¶¶ 10, 40. Accordingly, Count V for unjust enrichment must also be dismissed.

One final observation, while the Court is dismissing four of the five counts alleged by Immediate Capital, the remaining count for breach of contract is adequate to provide complete relief. Thus, the dismissed counts are not only subject to dismissal but also are redundant.

### III. Conclusion

For the reasons above, it is hereby ORDERED that Spongetech's Motion to Dismiss (D.E. #21) is GRANTED. Counts II, III, IV, and V are dismissed.

DONE AND ORDERED in Chambers, Miami, Florida, April 22, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record

5